IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRUNETTA RATCLIFF,** | ] |
| Plaintiff, | ] |
| v. | ] |
| | ]   2:11-CV-0029-KOB |
| **MOUNTAIN BROOK BOARD OF EDUCATION,** | ] |
| Defendant. | ] |

## MEMORANDUM OPINION

This matter comes before the court on the Defendant's Motion for Summary Judgment (doc. 13). The parties fully briefed the motion and the court held a hearing on the motion on Friday, May 18, 2012. For the reasons stated on the record, and summarized below, the court finds that the Defendant's motion for summary judgment is due to be granted in its entirety.

## SUMMARY OF FACTS AND PLAINTIFF'S ALLEGATIONS

*Background*

The court views the following facts in the light most favorable to the plaintiff, Brunetta Ratcliff. Ms. Ratcliff is an African American female who began working for Defendant Mountain Brook Board of Education as a custodian at Crestline Elementary School beginning December 4, 2006. Ms. Ratcliff started as a probationary employee pursuant to the Alabama Fair Dismissal Act. *See* Ala. Code § 36-26-101 (repealed July 1, 2011 by Students First Act of 2011, Ala. Code § 16-24C-1 *et seq*.). Defendant terminated her employment on October 12, 2009.

Ms. Ratcliff received three evaluations during her employment, one at the end of each

academic year, dated August 13, 2007, May 3, 2008, and June 9, 2009. Ms. Ratcliff's 2007 and 2009 evaluations rated her as "Below Standard." Ms. Ratcliff's 2008 evaluation rated her both "Below Standard" and "Standard,"; viewing the evidence in the light most favorable to Ms. Ratcliff, the court assumes the supervisor intended to rate her performance as "Standard." Regardless of her overall rating, however, each evaluation criticized Ms. Ratcliff's attitude towards her colleagues and her work. The court also notes that Ms. Ratcliff's June 9, 2009 evaluation form, the last produced before Ms. Ratcliff's termination, rated her performance as "Below Standard."

      On October 7, 2012, as Ms. Ratcliff was nearing non-probationary status, the principal of the school, Mike Melvin, sent an e-mail to the superintendent recommending that Ms. Ratcliff be terminated. In his e-mail, Dr. Melvin stated that "the reason for this recommendation is when thinking about the following question: is there a reasonable probability we could do substantially better, the answer is YES. Her last evaluation revealed several areas that needed improvement." Ex. 8 to Depo. Brunetta Ratcliff. The superintendent accepted Dr. Melvin's recommendation and, as required by statute, recommended that the Board approve Ms. Ratcliff's termination. This recommendation was placed on the Board agenda for October 12, 2009.

      Earlier on the day of the Board meeting, Ms. Ratcliff asked assistant principal David Key if she could take time off to be with her sick mother. Mr. Key, knowing that Ms. Ratcliff had been recommended to the Board for termination, responded that he would have to discuss her request with Dr. Melvin. After Mr. Key spoke to Dr. Melvin, they both met with Ms. Ratcliff and told her that the Board was meeting that day to consider her termination. The Board approved her termination that afternoon.

This final request for time off on October 12, 2009, was the only time that any of Ms. Ratcliff's supervisors did not grant her request for leave. Before October 12, 2009, her supervisors had never denied her time off on the numerous occasions she requested leave.

Ms. Ratcliff had also required time off on October 2, 2012, when she was taken to the hospital for experiencing chest pains and high blood pressure. She stayed at the hospital for three hours; she returned to work the next day with no medical restrictions. She testifies that after she was taken to the hospital, but before she was terminated, she had told Mr. Key that she felt "a little woozy." Depo. Brunetta Ratcliff 20:4–20:22.

*Ms. Ratcliff's allegations*

Ms. Ratcliff alleged four federal causes of action: interference with her rights under the Family and Medical Leave Act (count one); disability discrimination under the Americans with Disabilities Act (count two); race discrimination under Title VII (count four); and race discrimination under § 1981, by and through § 1983 (count five). She also alleged two state causes of action: disability discrimination under the Alabama Disability Discrimination statute, Ala. Code § 21-7-1 *et seq.* (count three); and violation of Ala. Code § 11-43A-45, which prohibits race discrimination in removal from municipal positions (count six). In her brief responding to the Defendant's motion for summary judgment, Ms. Ratcliff conceded that the evidence produced in discovery did not support her race discrimination claims. Accordingly, the court GRANTS summary judgment on counts four, five, and six.

## SUMMARY OF FINDINGS

*Interference with benefits and rights under the FMLA*

The court concludes that Ms. Ratcliff cannot establish a claim for interference with her

FMLA rights because the Defendant terminated her for reasons other than her requested leave. The Eleventh Circuit has explained that "the right to commence FMLA leave is not absolute." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010). When a decision maker is not aware of a plaintiff's FMLA request at the time he decides to terminate her, the termination is for reasons other than the requested leave "as a matter of law." *Krutzig*, 602 F.3d at 1236.

      Dr. Melvin sent an e-mail to the superintendent recommending that Ms. Ratcliff be terminated five days before she requested time off. Although the Board did not actually approve her termination until October 12, the court concludes that her FMLA interference claim fails as a matter of law because the decision to terminate her was, in effect, made before she requested leave. Although the Board had to approve the recommendation from the superintendent, the principal and superintendent had decided prior to Ms. Ratcliff's request for leave that her employment should be terminated because of poor employment. Accordingly, the court GRANTS summary judgment on Ms. Ratcliff's FMLA interference claim.

*Disability Discrimination under the ADA and ADAAA*

      The court concludes that Ms. Ratcliff did not provide sufficient evidence for a reasonable jury to find that she had a disability at the time she was terminated. Under the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), she must prove disability by showing that she had a physical or mental impairment that substantially limited one or more of her major life activities, that she had a record of such an impairment, or that she was regarded as having such an impairment. The ADA, as amended, further explains that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," including medication. 42

4

U.S.C.S. § 12102(4)(E). The burden remains on Ms. Ratcliff, however, to prove she has a disability. *See Lloyd v. Hous. Auth. of the City of Montogmery, AL*, 2012 U.S. Dist. LEXIS 58817, at * 20 (M.D. Ala. Apr. 27, 2012). In his opinion in *Lloyd*, Judge Fuller persuasively explained that, even after the ADAAA, a plaintiff still bears the burden of producing evidence about how her condition would affect her if left untreated. *Lloyd*, 2012 U.S. Dist. LEXIS 58817, at * 20.

Ms. Ratcliff did not offer any evidence, beyond her three-hour visit to the hospital and her occasional ill and woozy feelings, that her high blood pressure *substantially impaired* her major life activity of working. Moreover, even if the court were to assume that her scant evidence of disability created a genuine dispute of material fact over whether her high blood pressure was a disability, she has not offered any evidence to show that her termination was pretext for disability discrimination. Dr. Melvin recommended Ms. Ratcliff's termination based on her evaluations, her problematic attitude toward her supervisor and co-workers, and the fact that she would soon become a non-probationary employee unless terminated. Ms. Ratcliff has offered no evidence that these reasons were pretext for disability discrimination, especially when the majority of the remaining custodial staff also had high blood pressure. Accordingly, the court GRANTS summary judgment on Ms. Ratcliff's ADA disparate treatment claim.

*Ms. Ratcliff's state law claim*

The Eleventh Circuit has noted that "[t]he decisions to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004)

(citation omitted). Because Ms. Ratcliff's only federal claims giving rise to original jurisdiction in this court stand to be dismissed, the court finds no basis upon which to allow the remaining state law claim to proceed and declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the reasons stated above and on the record, the court GRANTS the motion for summary judgment, and ENTERS JUDGMENT in favor of the Defendant and against Plaintiff Brunetta Ratcliff as to all her federal claims and her state law claim for violation of Alabama Code § 11-43A-45 (count six). The court also DISMISSES Plaintiff Brunetta Ratcliff's remaining state law claim WITHOUT PREJUDICE. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 22nd day of May, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE